IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NATALIA TOTROVA,

    Petitioner,

v.       Case No. 2:25-cv-01298-DHU-GBW

PAMELA BONDI, Attorney General of the
United States; KRISTI NOEM,
Secretary of the Department of Homeland
Security; MARY DE ANDA-YABARRA,
El Paso Field Office Director Immigration
and Customs Enforcement and Removal
Operations; TODD LYONS, Acting
Director of U.S. Immigration Customs
and Enforcement; DORA CASTRO, Warden
of the Otero County Processing Center,

    Respondents.

## ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER

THIS MATTER is before the Court on Petitioner's Motion for a Temporary Restraining Order. Doc. 3. For the reasons set forth below, Petitioner's Motion is GRANTED.

## I.
## PROCEDURAL BACKGROUND

On November 25, 2025, Petitioner was detained by immigration officials outside of a hotel in Niagara Falls, New York. Doc. 1 at 14 ¶ 49; Doc. 3 at 10. She was eventually transferred to the Otero County Processing Center in Chaparral, New Mexico, where she remains in custody. Doc. 1 at 14 ¶ 50, 15 ¶ 53.

On December 23, 2025, Petitioner filed a *pro se* verified Petition for Writ of Habeas Corpus ("Habeas Petition"). *See* Doc. 1. In the Habeas Petition, Petitioner alleges, among other things, that her re-detention violates the Due Process Clause of the Fifth Amendment because

Respondents re-detained her without notice and a hearing showing a change in circumstances, specifically that she is now a danger to the community or a flight risk. *Id.* at 21-23.

Also on December 23, 2025, Petitioner filed a *pro se* Motion for a Temporary Restraining Order ("TRO"). Doc. 3. The Motion for TRO meet the requirements of Rule 65 by certifying email notice to Respondents' counsel, specifically the United States Attorney for the District of New Mexico. *Id.* at 17. The Motion requests that the Court order her immediate release from immigration custody or, alternatively, a bond hearing within seven days. *Id.* at 2.

On December 26, 2025, the Court set a hearing on Petitioner's Motion for TRO for January 2, 2026 (Doc. 6), and ordered Respondents to facilitate Petitioner's in-person appearance at the hearing (Doc. 7).

On January 2, 2026, the Court held a hearing on Petitioner's Motion for TRO. Respondents appeared at the hearing. *See* Doc. 9. Respondents failed to comply with the Court's order directing them to facilitate Petitioner's appearance at the hearing. *Id.* At the hearing, the Court granted Petitioner's Motion for TRO, ordering Petitioner's release. *Id.* The Court stated that it would issue a written order detailing its decision. *Id.*

## II.
## FACTUAL FINDINGS

Petitioner supported her Motion for TRO with the facts provided in her verified Habeas Petition and the Motion. *See* Docs. 1 and 3. Respondents did not provide any information, before or during the hearing, to dispute the factual allegations contained in the Habeas Petition and Motion. *See* Doc. 9. Accordingly, at this stage of the litigation, based on the facts provided in Petitioner's verified Habeas Petition and Motion, the Court makes the following initial findings of fact concerning Petitioner's detention:

1. Petitioner Natalia Totrova is a citizen of Russia who arrived at the United States by crossing the border near San Ysidro, California, on January 18, 2023. Doc. 1 at 13-14 ¶¶ 41, 44. Shortly after entering, Petitioner encountered immigration officials, was detained, and then subsequently released from immigration custody. In releasing her from immigration custody, Respondents considered Petitioner's facts and circumstances, and determined that she was not a danger to the community or a flight risk. *Id.* at 20 ¶ 79.

2. From the time of her arrival at the United States, Petitioner accrued no criminal history. Doc. 3 at 6.

3. Petitioner was placed in removal proceedings, which were transferred to the Chicago Immigration Court. Doc. 1 at 14 ¶¶ 45, 47. She timely filed an Application for Asylum in February 2023. *Id.* at 14 ¶ 47. Petitioner obtained an Employment Authorization Document, more commonly known as a work permit, for use during the pendency of her proceedings and Master Calendar hearings were set for her to attend. *Id.* at 14 ¶ 48.

4. From the time of the initiation of her removal proceedings to her re-detention, Petitioner attended her Master Calendar hearings. Doc. 3 at 6-7.

5. Almost three years later, on November 25, 2025, Petitioner was re-detained by immigration officials outside of a hotel in Niagara Falls, New York. Doc. 1 at 14 ¶ 49; Doc. 3 at 10. She was transported to the Buffalo Federal Detention Facility in Batavia, New York, and then transferred to Camp Montana Detention Facility in El Paso, Texas. Doc. 1 at 14 ¶ 50. Her removal proceedings were transferred to the El Paso Immigration Court. *Id.* at 14 ¶ 52.

6. On December 2, 2025, Petitioner submitted a bond redetermination request in the El Paso Immigration Court. *Id.* at 14 ¶ 51. On December 16, 2025, the Immigration Judge stated that the Court lacked jurisdiction to conduct a bond redetermination hearing. *Id.* at 14 ¶ 52.

During this time, Petitioner was transported to the Otero County Processing Center in Chaparral, New Mexico, where she remains in custody. *Id.* at 14 ¶ 50, 15 ¶ 53.

7. At the hearing before the Court on January 2, 2026, Respondents' counsel could not provide any information explaining the basis for Petitioner's detention. *See* Doc. 9.

### III.
### LEGAL STANDARD

A temporary restraining order "preserve[s] the status quo [ante]" before a final decision on the merits. *Resolution Trust Corp v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). The status quo ante is "the last peaceable uncontested status existing between the parties before the dispute developed." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 798 n. 3 (10th Cir. 2019)(citation omitted).

To obtain a temporary restraining order, a petitioner "must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and public interest weigh in her favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A petitioner seeking a temporary restraining order must demonstrate that "*all four* of the equitable factors weigh it [his] favor." *Sierra Club, Inc. v. Bostick*, 539 Fed. App'x 885, 888 (10th Cir. 2013). The likelihood-of-success and irreparable-harm factors are "the most critical" in the analysis. *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1139 (D.N.M. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Regarding the irreparable-harm factor, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (citations omitted). The balance-of-equities and public-interest factors "merge" where, like here, the government is the opposing party. *Nken*, 556 U.S. at 435.

# IV.
# DISCUSSION

I.      **Petitioner Is Likely to Succeed on the Mertis of Her Procedural Due Process Claim**

Petitioner argues that the Due Process Clause of the Fifth Amendment bars Respondents from re-detaining her without notice and hearing. Doc. 3 at 13. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

   A.  Petitioner Possesses a Protected Liberty Interest

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that there is a substantial likelihood that Petitioner will be able to show that her release from immigration custody in this case rises to the level of a protected liberty interest. As Petitioner notes (Doc. 3 at 8), individuals may develop a protected liberty interest in their conditional release. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey*. *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Comparing Petitioner's release from immigration custody in this case to the liberty interest in *Morrissey*, Petitioner's release from immigration custody enabled her to "to a wide range of things," including to work. 408 U.S. at 482. Indeed, Petitioner was released from immigration custody three years ago and, not long after, obtained a work permit.

B. <u>A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained</u>

Having found that there is a substantial likelihood that Petitioner will be able to show a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers the three factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): 1) "the private interest that will be affected by the official action," 2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Turning to the first *Mathews* factor, the Court finds there is a substantial likelihood that Petitioner can show that she has a significant private interest in remaining free from detention after being released from immigration custody. Doc. 3 at 9. As mentioned previously, Petitioner was out of immigration custody for almost three years prior to being re-detained by immigration officials.

Turning to the second *Mathews* factor, the Court finds that there is a substantial likelihood that Petitioner can show that risk of erroneous deprivation in this case is considerable, particularly here where immigration officials randomly detained Petitioner outside of a hotel in Niagara Falls, New York, without justification. *Id.* at 10-11.

Turning to the third *Mathews* factor, the Court finds that there is a substantial likelihood that Petitioner can show that Respondents' interest in placing her in detention is low. Petitioner has a pending Application for Asylum before the immigration court and has attended her Master Calendar hearings. Doc. 1 at ¶ 47; Doc. 3 at 6-7. Additionally, as Petitioner notes, custody

hearings are relatively routine in the immigration court and impose minimal costs on the government. Doc. 3 at 11.

On balance, the Court finds that there is a substantial likelihood that Petitioner, under the three *Mathews* factors, can show that she was entitled to a pre-deprivation hearing prior to being re-detained. Having found that there is a substantial likelihood that Petitioner can show a protected liberty interest, and that due process requires notice and a pre-deprivation hearing, the Court finds that Petitioner has established a substantial likelihood of success on the merits of her procedural due process claim.

## II.     Petitioner Will Face Irreparable Harm Without Injunctive Relief

Turning to the second required showing for a temporary restraining order, the Court finds that Petitioner has demonstrated that her detention has caused and will continue to cause irreparable harm. The infringement of a constitutional right is enough to establish irreparable injury. *Free the Nipple-Fort Collins*, 916 F.3d at 805. Having found a substantial likelihood of success on the merits of Petitioner's procedural due process claim, Petitioner has established irreparable injury deriving from the violation of her procedural due process rights. "[N]o further showing of irreparable injury" is necessary. *Id.*

## III.    The Balance of Equities and Public Interest Weigh in Petitioner's Favor

Finally, Petitioner has demonstrated that the balance of the equities and the public interest weigh in favor of issuing the requested relief. When the government is the party opposing the requested temporary restraining order, the balance of equities and public interest merge. *Nken*, 556 U.S. at 435. First, the government has no interest in engaging in an unlawful practice. *See, e.g., Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (citing *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)). Moreover, any burden imposed by requiring Respondents to release

Petitioner from custody until she is provided notice and a hearing is minimal compared to the weighty liberty interests at stake while she sits in detention. These considerations are persuasive and show that Petitioner's liberty interest in her conditional release outweighs any burden on the government to provide her with notice and a hearing. It is also in the public interest to release Petitioner to promote Respondents' compliance with our Constitution and laws.

## V.
## CONCLUSION

In conclusion, the Court finds that the requirements for issuing a temporary restraining order are met. The Court also finds that the status quo ante is the position that Petitioner was in prior to her re-detention by immigration officials. **IT IS THEREFORE ORDERED** that:

1. Petitioner's request for a temporary restraining order is GRANTED;

2. Respondents are ORDERED to release Petitioner within twenty-four hours of the Court's oral ruling made at the hearing on Petitioner's Motion for TRO held on January 2, 2026, at 1:00 PM. Upon release, Respondents may not subject Petitioner to any post-release monitoring or supervision, nor prohibit Petitioner from returning to her residence, nor may they subject Petitioner to an appointment or check-in during the pendency of this habeas litigation;

3. Respondents are RESTRAINED from re-detaining Petitioner unless they provide Petitioner with notice and demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Petitioner is a danger or flight risk.

4. This order, for good cause, shall remain in effect until the habeas litigation is resolved. *See* FED. R. CIV. P. 65(b)(2).

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE